**F. Earl McGINNES, Jr., Plaintiff-below-Appellant,**

**v.**

**DEPARTMENT OF FINANCE, GOVERNMENT OF NEW CASTLE COUNTY, et al., and Charles A. Young et al., members of the Board of Education of the Conrad Area School District, Defendants-below-Appellees.**

Supreme Court of Delaware.

Submitted April 14, 1976.

Decided May 20, 1976.

---

F. Earl McGinnes, Jr., pro se.

Thomas Herlihy, Jr. and Morris Cohen, Wilmington, for defendants-appellees.

Before HERRMANN, Chief Justice, and DUFFY and McNEILLY, Justices.

DUFFY, Justice:

The issue for determination in this appeal requires a construction of 14 Del.C. § 1916(b) which governs local school taxation following a general reassessment of all real property in a County.

## I

Plaintiff, a citizen and a taxpayer in the Conrad Area School District, filed an action in the Court of Chancery alleging that the rate of taxation established by the Board of Education for the District exceeded that permitted by law. The Court denied injunctive relief because, in its view, the governing Statute established a maximum tax on the basis of taxes levied in the prior year, not on the amount of taxes actually collected therein. Since that was the basis used by the Board in fixing the rate, the Court granted its motion for summary judgment.

## II

We begin with 14 Del.C. § 1916 which provides as follows:

"(a)   Based on the total value of all taxable property as shown on the county assessment list and on the amount to be raised, the board of the district shall fix the rate of taxation plus 10 percent for delinquencies.

(b)   Whenever the qualified voters of a reorganized school district have approved a specific rate of taxation or specified amount of taxation under § 1903 of this chapter, and a subsequent general reassessment of all real estate in the county changes the total assessed valuation of the school district, the local board of education of each such local school district shall calculate a new real estate tax rate which, at its maximum, would realize no more than 10 percent increase in actual revenue over the revenue derived by real estate tax levied in the fiscal year immediately preceding such reassessed real estate valuation. Any subsequent increase in rate of taxation shall be achieved only by an election of the qualified voters in such local school district according to the procedures in § 1903 of this chapter.

(c)   The board shall execute and deliver its warrant, with a duplicate of the assessment list, to the receiver of taxes and county treasurer of the county or counties wherein the district is situated."

There was a general reassessment of all real property in New Castle County which became effective for tax purposes in fiscal 1974. The Board established a rate of taxation under § 1916(b) and then added the "10 percent for delinquencies" referred to in § 1916(a). Its right to add that 10 percent is the critical issue in this action.

The Board relies on the long legislative history of the delinquency addition, beginning with 32 Del.L., ch. 160, § 54 (1921) and its independent status, that is, it requires no referendum for validation. *McComb v. Dutton*, Del.Super., 2 Hau. 255, 122 A. 81 (1923).[1] And it contends that the statutory purpose permits an increase for delinquencies on the basis of taxes levied in the prior year, that is, without reference to or limitation by the revenue collected or received in that year. The Trial Court accepted that construction of the Statute.

### III

Before returning to § 1916, it may be helpful to take a brief overview of the statutory plan permitting assessment of local school taxes, 14 Del.C. § 1902. Under that plan an election must precede any levy of tax, 14 Del.C. § 1903.[2] Such election may be on the basis of a "specified amount" or of a "specified rate of taxation." The Board determines which basis is to be offered to the voters. The election procedures are governed by specified Statutes. See 14 Del.C. § 1904, etc.

If an additional tax is authorized by a § 1903 election, then the Board adds 10 percent for delinquencies to the authorized rate. 14 Del.C. § 1913.[3] Afetr approval in a § 1903 election the Board may continue to make an annual tax levy without an election provided it does not exceed an amount or a rate authorized by the election. 14 Del.C. § 1914.[4]

The statutory scheme thus contemplates that voters in the District must give prior approval to any taxation and that can be done by reference to either a specific amount of dollars to be raised or to a rate of taxation. If approval has been given to a specific amount of money, this of course must be translated into a tax rate. In either event, an additional 10 percent for delinquencies is added pursuant to § 1913 and § 1916(a).

This takes us down to § 1916(b), which is the key section in issue. As we have noted, it establishes a procedure to be followed after there has been a general reassessment in the County. It provides that (a) if the voters have approved either a specific rate of taxation or a specified amount of taxation (under § 1903) and,

---

1. The Board argues also that the issue is not properly before this Court; but, in our view, it is governed by the Chancery order of June 30, 1975, which was a final order granting summary judgment to the Board. It follows that the issue is both timely and contestable in this appeal.

2. 14 Del.C. § 1903 states:
   "Before any school board levies a tax under § 1902 of this title, it shall determine whether the tax shall be on the basis of a specified amount or of a specified rate of taxation and shall call a special election to be held at the usual place or places for holding school elections in the district. There shall be not more than 1 such special election held during any 6 month period.

3. 14 Del.C. § 1913 provides:
   "If the additional tax was authorized on the basis of amount of tax to be collected, the school board shall, upon the completion of the assessment, fix the rate sufficient

to raise the amount determined to be raised at that time with an addition of 10 percent added thereto for delinquencies and costs of collection. If the additional tax was authorized on the basis of a specified rate of taxation, the board shall add thereto 10 percent of said authorized rate for delinquencies and costs of collection."

4. 14 Del.C. § 1914 provides:
   "The school board of any district which has for 1 year levied a local tax under this chapter, may continue annually, without a further election or referendum, to levy such local tax not exceeding in amount the tax originally authorized by an election if said original authorization was on the basis of an amount of tax, or not to exceed the rate of tax originally authorized by an election if said original authorization was on the basis of a rate of taxation, each together with an added 10 percent for delinquencies and costs of collection as provided in § 1913 of this title."

(b) if a general reassessment changes the total assessed valuation in the District, then the Board fixes a new rate which "at its maximum" may realize no more than a 10 percent increase "in actual revenue over the revenue derived by real estate tax levied in the fiscal year immediately preceding" reassessment. Any additional increase requires a § 1903 election.

As we read § 1916(b), it establishes a dollar ceiling of 10 percent more than the amount of "revenue derived" by or from the tax levied in the fiscal year immediately preceding reassessment. The two key words used in the Statute have common meanings: "revenue" refers to the annual or periodic yield from taxation; "derived" means that which is acquired or received. See *Webster's Third New International Dictionary.* Thus, as used in § 1916(b), the phrase refers to the amount of taxes actually received by the Board. But there is no requirement that the revenue derived be limited to that received during the fiscal year immediately preceding reassessment. The ceiling is imposed on the "tax levied" in that year, not on the amount received in that year. This means that if all taxes "levied in the [preceding] fiscal year" are not actually collected in that year, the tax rate may be increased to reflect additional collections in subsequent years. But the total "revenue derived" from the tax levied in that fiscal year may *not* be exceeded (except for the 10 percent permitted in § 1916(b)).

By definition, the total amount so received (whenever that may be) was based on a rate that included an add-on for delinquen-cies. And subparagraph (b) stands completely on its own, the dollar ceiling is not fixed by reference to subparagraph (a) nor is tax delinquency even referred to. The section is directed solely to the procedure to be followed after there has been a County-wide reassessment and governs that special situation. And it specifies that the tax it permits cannot be increased without a § 1903 election.

In sum, the statutory approach is on the basis of how much money is received from the tax levied in the prior year; and those receipts, whenever collected, are the product of both the regular tax *and* the add-on for delinquencies. That total amount plus the authorized 10 percent is the absolute ceiling which is then converted into the applicable rate.

It follows from this analysis that the judgment of the Court of Chancery must be reversed.

IV

We limit this opinion to a construction of the governing Statutes and we remand with instruction to the Court of Chancery for the formulation of appropriate relief. At the present time this opinion shall have prospective effect only, that is, for the tax years beginning July 1, 1976. On application, the Court of Chancery shall determine, after further development of the facts and the law, whether the opinion shall be given retrospective application.

Reversed and remanded for further proceedings consistent herewith.