# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| 250 EXECUTIVE, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0411-JTL |
| | ) | |
| CHRISTINA SCHOOL DISTRICT, | ) | |
| and CHRISTINA SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 14, 2022
Date Decided: February 28, 2022

Daniel F. McAllister, TARABICOS, GROSSO & HOFFMAN LLP, New Castle, Delaware; *Counsel for Petitioner*.

David H. Williams, Michelle G. Bounds, MORRIS JAMES LLP, Wilmington, Delaware; *Counsel for Respondents*.

**LASTER, V.C.**

Petitioner 250 Executive, LLC (the "Owner") owns a parcel of real estate located in the Christina School District (the "District"). The Owner seeks a refund of an allegedly excessive amount of school taxes that the Owner paid to the District. The Owner contends that it paid excess taxes to the District because New Castle County (the "County") erred when measuring the square footage of a building on the parcel when assessing its value for tax purposes. The County has admitted its error and refunded the excess taxes that the Owner paid to the County. The only taxes that remain in dispute are those that the Owner paid to the District based on the County's erroneous assessment.

The Owner submitted a tax refund request to the District. The Owner contends that by statute, the District must forward the request to the County. Instead, the Board of Education for the District (the "Board") held a hearing and denied the Owner's request.

The Owner filed this lawsuit seeking a declaratory judgment that the District was required by statute to forward the refund request to the County and that the District violated the applicable statute by denying the request. The Owner seeks a mandatory injunction to enforce the declaratory judgment that it hopes to obtain.

The District and the Board have moved to dismiss the petition for lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1). This decision grants their motion. The case is dismissed, subject to the Owner's right to elect to transfer the case to the Superior Court.

## I. FACTUAL BACKGROUND

The facts are drawn from the petition and the documents it incorporates by reference. At this stage of the proceedings, the allegations of the petition are accepted as true, and the petitioner is entitled to all reasonable inferences that the allegations support.

### A. The Owner's Tax Payments

The Owner is a Delaware limited liability company that owns the real estate located at 250 Executive Drive in Newark, Delaware (the "Property"). The improvements to the Property include a commercial building (the "Building") and a parking lot.

The Property is located within the District. The Board has the authority to administer and supervise the District. The petition names both the District and the Board as respondents. For simplicity, this decision generally refers only to the District.

A school district has authority to levy taxes on real estate located within its borders. When levying taxes, a school district uses the assessments prepared by the county in which the real estate is located.

The Property is located within the County. Between 2006 and 2019, the County assessed the value of the Building for tax purposes based on the Building having 79,600 square feet of space. In connection with the 2019 assessment, the Owner sought to verify the measurement and determined that the Building only had 63,000 square feet of space. In 2020, the County re-measured the Building, confirmed that its prior measurement was inaccurate, and agreed with the Owner's measurement.

The reduction in square footage reduced the assessed value of the Building from $1,569,100.00 to $1,293,500.00. Between 2006 and 2019, the Owner paid school taxes and

real estate taxes based on the erroneous assessments. During this period, the Owner paid (i) $24,016.03 in excess real estate taxes to the County, (ii) $5,112.10 in excess school taxes to the New Castle County Vocational-Technical School District (the "Vo-Tech District"), and (iii) $69,244.52 in excess school taxes to the District.

## B. The Refund Requests

In May 2020, the Owner sent a refund request to the District. The Owner sent similar requests to the County and to the Vo-Tech District.

In submitting its request to the District, the Owner invoked Section 1921 of Title 14 of the Delaware Code. That section states:

> Local county school taxes paid through error or by mistake may be refunded by the school district to which the taxes were paid as follows:
>
> (1) The person claiming a refund of taxes shall file with the board of the school district a request for refund under oath or affirmation stating the payment of the taxes, the person, firm, corporation or association by whom the taxes were paid, and the date of payment and stating why it is believed the taxes were paid in error;
>
> (2) The school board shall submit the request for refund to the receiver of taxes of the county for the receiver's approval of the payment of the refund and shall make no refund unless the receiver of taxes approves the refund in writing, except that capitation taxes may be refunded without such approval;
>
> (3) The school board and the receiver of taxes shall keep a record of all refunds for at least 3 years, which record shall be open for public inspection during regular business hours.

14 *Del. C.* § 1921. By submitting its request, the Owner sought to comply with the requirements of Section 1921(1) and initiate the refund procedure contemplated by statute.

3

By letter dated July 2, 2020, the District acknowledged receipt of the refund request. But the District did not "submit the request for refund to the receiver of taxes of the county for the receiver's approval of the payment of the refund," as contemplated by Section 1921(2). Instead, the District's letter noted that the Owner had submitted a similar refund request to the County and asked the Owner to submit a copy of the County's determination once it was received. The District noted that the Board would hold a hearing on the refund request once it had received a copy of the County's determination.

On January 12, 2021, the County adopted Resolution 21-004, which approved a tax credit for the Owner in the amount of $24,016.03 (the "Resolution"). The Resolution acknowledged the County's mistake and noted that the incorrect assessment had caused the Owner to pay excessive school taxes to the Vo-Tech District and the District. Based on the Resolution, both the County and the Vo-Tech District refunded the overpayments.

By letter dated January 22, 2021, the Owner provided the Resolution to the District and reiterated its request for a refund. Once again, the District did not "submit the request for refund to the receiver of taxes of the county for the receiver's approval of the payment of the refund" as contemplated by Section 1921(2). Instead, during a meeting on April 13, 2021, the Board denied the request.

As a result of the vote, the Board did not submit the Owner's request to the County.

C.    **This Litigation**

On May 11, 2021, the Owner commenced this action by filing a petition. The lone substantive count in the petition seeks a series of declaratory judgments.

4

In its principal request, the Owner seeks a declaration that Section 1921 requires the District to submit the refund request to the County. Redundantly, the Owner seeks a declaration that the District must comply with Section 1921.

In an alternative request, the Owner seeks a declaration that the Resolution amounts to the approval of the refund request. As an adjunct to that declaration, the Owner seeks a determination that the District must pay the refund.

The only other count in the petition seeks an injunction that would require the District to comply with the court's interpretation of Section 1921 by forwarding the request for a refund to the receiver of taxes. The Owner contends that an injunction is necessary because Section 1921 provides the exclusive mechanism for obtaining a refund of school taxes paid in error, and the District has failed to comply with Section 1921 to date.

On June 7, 2021, the District moved to dismiss the petition for lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1). The Owner cross-moved for judgment on the pleadings under Court of Chancery Rule 12(c) or, in the alternative, for summary judgment under Court of Chancery Rule 56.

This decision grants the motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. It does not reach the other motions.

## II.     LEGAL ANALYSIS

The District has moved to dismiss the petition for lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1). The Court of Chancery is a court of limited jurisdiction. *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp*., 669 A.2d 36, 39 (Del. 1995). "The Court of Chancery will grant a motion to dismiss under Rule 12(b)(1) if it

5

appears from the record that the Court does not have jurisdiction over the claim." *AFSCME Locs. 1102 & 320 v. City of Wilmington*, 858 A.2d 962, 965 (Del. Ch. 2004).

The Court of Chancery can exercise subject matter jurisdiction over a case that falls into one of three buckets. *See generally Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004). First, jurisdiction exists if a plaintiff asserts a claim sounding in equity. *See* 10 *Del. C.* § 341. Second, jurisdiction exists if the plaintiff seeks equitable relief and there is no adequate remedy at law. *See* 10 *Del. C.* §§ 341, 342. Third, jurisdiction exists by statute. *See, e.g.*, 8 *Del. C.* § 111.

At the pleading stage, "[e]quitable jurisdiction must be determined from the face of the complaint as of the time of filing, with all material factual allegations viewed as true." *Intl Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991). If a defendant challenges the existence of jurisdiction by relying on material extrinsic to the pleadings, then the motion is treated as one for summary judgment, and the plaintiff must support the allegations establishing jurisdiction "with competent proof." *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009) (cleaned up). Here, the challenge rests on the face of the complaint.

When a plaintiff seeks to ground jurisdiction on the need for an equitable remedy, the court "must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim." *Candlewood*, 859 A.2d at 997. "A litigant cannot gain access to the Court of Chancery simply by adding a claim for equitable relief to an otherwise legal claim." *Reed v. Brady*, 2002 WL 1402238, at *3 (Del. Ch. June 21, 2002), *aff'd*, 818 A.2d 150

6

(Del. 2003). The plaintiff must also show that the plaintiff lacks an adequate remedy at law. *See El Paso*, 669 A.2d at 39. A remedy at law is adequate if it "will afford the plaintiffs full, fair and complete relief." *Hughes Tool Co. v. Fawcett Publ'ns, Inc*., 315 A.2d 577, 579 (Del. 1974).

## A.     Count I: The Request For Declaratory Relief

In Count I of the petition, the Owner seeks a declaration regarding the proper interpretation of Section 1921. The parties disagree about whether Section 1921 confers any discretion on the District. The Owner contends that Section 1921 requires the District to submit a refund request to the County. The District contends that Section 1921 grants the Board discretion over a refund request.

Although neither party has cited the Delaware Declaratory Judgment Act, that statute provides the starting point for analyzing whether the court has jurisdiction over this claim. The pertinent provision states:

> Except where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree.

10 *Del. C.* § 6501.

The Delaware Declaratory Judgment Act empowers the "courts of record" to issue declaratory judgments "within their respective jurisdictions." *Id.* It does not provide an independent basis for jurisdiction that would not otherwise exist. *See Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591 (Del. 1970). The Delaware

7

Declaratory Judgment Act does not create substantive rights of any sort; it merely offers "a procedural means for securing judicial relief in an expeditious and comprehensive manner." *Hoechst Celanese v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1133, 1136 (Del. Super. 1992).

When evaluating whether equitable jurisdiction exists in a declaratory judgment action, the question is therefore whether "there is any underlying basis for equity jurisdiction measured by traditional standards." *Diebold*, 267 A.2d at 591. The Owner's core claim is the assertion that the District failed to comply with Section 1921. That assertion presents a question of statutory interpretation.

"Issues of statutory and constitutional interpretation are, beyond question, legal issues capable of resolution by the Superior Court, and declaratory relief is available there . . . ." *Reed*, 2002 WL 1402238, at *9 n.7. A request for a declaratory judgment regarding the interpretation of a Delaware statute therefore does not give rise to an equitable claim that could confer jurisdiction under the first bucket. Such a request, standing alone, only will confer jurisdiction if the General Assembly has given the Court of Chancery jurisdiction over issues relating to the statute in question, thereby invoking the third jurisdictional bucket. Here, the General Assembly has not granted jurisdiction to the Court of Chancery to entertain disputes under Section 1921. Jurisdiction therefore does not exist under the first or third buckets.

In response, the Owner relies on *McGinnes v. Department of Finance (McGinnes Chancery)*, 377 A.2d 16 (Del. Ch. 1977), in which this court issued a decision on remand from the Delaware Supreme Court's decision in *McGinnes v. Department of Finance*

8

*(McGinnes Supreme)*, 359 A.2d 166 (Del. 1976). In that litigation, a property owner contended that a school district had improperly added 10% to the rate of taxation approved by taxpayers. *McGinnes Supreme*, 359 A.2d at 167. The property owner brought a class action seeking refunds under Section 1921. *McGinnes Chancery*, 377 A.2d at 19, 22. This court heard the case and denied the request, holding that the school board had calculated the tax rate accurately. *McGinnes Supreme*, 359 A.2d at 167.

The property owner appealed, and the Delaware Supreme Court reversed. *Id.* at 169. The Delaware Supreme Court then remanded the case so that the Court of Chancery could determine the appropriate scope of relief, including whether the relief would be prospective only or also retroactive. *See id.* On remand, the Court of Chancery permitted the taxpayers to invoke Section 1921 to recover refunds for prior years, thereby granting retroactive relief. *McGinnes Chancery*, 377 A.2d at 21.

To implement its ruling, the court directed the parties to submit "an order in accordance with this opinion." *Id.* The school district moved for reargument, and the court stood by its ruling. *Id.* at 22. In doing so, the court addressed the school district's argument that the doctrines of laches and estoppel should bar any requests for refunds because the requests would be disruptive to the day-to-day operations of the district. *Id.* The court rejected this argument, explaining that "[a]ny disruptive effect of the judgments, which here may be ultimately collected, on defendants' financial affairs is irrelevant." *Id.* By referring to judgments that "may ultimately be collected," the court plainly contemplated enforceable judgments for money damages.

9

The Owner contends that the *McGinnes* litigation demonstrates that this court can hear its suit, issue a declaration regarding the meaning of Section 1921, and enter an order enforcing the statute. Neither of the extant *McGinnes* decisions, however, mentions the issue of subject matter jurisdiction. There is no indication that any litigant raised it, and the courts do not appear to have considered it.

When a decision does not rule on an issue, the decision does not constitute binding precedent on that subject. The Delaware Supreme Court follows the traditional definition of "dictum," describing it as a judicial statement on an issue that "would have no effect on the outcome of [the] case." *Brown v. United Water Del., Inc.*, 3 A.3d 272, 276–77(Del. 2010). In Delaware, dictum is "without precedential effect." *Crown EMAK P'rs, LLC v. Kurz*, 992 A.2d 377, 398 (Del. 2010). "Thus, broad judicial statements, when taken out of context, do not constitute binding holdings." *In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014). By parity of reasoning, a decision does not provide authority for a subject if the court did not address it at all.

The *McGinnes* decisions thus do not provide authority for the proposition that this court has jurisdiction to hear an action under Section 1921.[1] The claim for a declaratory judgment will not support subject matter jurisdiction here.

---

[1] In fairness to the Owner, a question about the existence of subject matter jurisdiction is arguably different, because a court "has a duty to examine issues of subject matter jurisdiction sua sponte." *See Crown Castle Fiber LLC v. City of Wilmington*, 2021 WL 2838425, at *1 (Del. Ch. July 8, 2021). The *McGinnes* decisions did not raise the lack of subject matter jurisdiction, which supports a weak inference that the courts believed they

10

**B.      Count II: The Request For Injunctive Relief**

The real question is whether jurisdiction exists under the second bucket, i.e. due to the need for injunctive relief. This court will exercise jurisdiction over a request for a declaratory judgment interpreting a statute if the petitioner can demonstrate a need for equitable relief to implement the remedy. *See Kraft v. WisdomTree Invs., Inc*., 145 A.3d 969, 979 (Del. Ch. 2016). The Owner has attempted to establish jurisdiction on that basis through Count II of the petition, which seeks an injunction compelling the District to comply with the court's interpretation of Section 1921.

A tag-along injunction to enforce a declaratory judgment is generally insufficient to confer equitable jurisdiction. "Declaratory judgments are self-executing and have the force and effect of a final judgment or decree." *Reed*, 2002 WL 1402238, at *3 (footnote and internal quotation marks omitted). Parties are expected to comply with final judgments. Consequently, unless there is reason to believe that a party will disregard the judgment, there is no need for an add-on in injunction. *Id.*

There are some settings where equitable relief may be necessary to implement a declaratory judgment. Interim relief may be necessary. *See Doe v. Coupe*, 2015 WL 4239484, at *1 (Del. Ch. July 14, 2015) (finding equitable jurisdiction existed where plaintiff sought both preliminary and permanent injunctive relief). Or the implementation

---

could exercise jurisdiction over that type of case. Although the duty to examine subject matter jurisdiction exists, a busy trial court may not spot a potential jurisdictional flaw, and a busy appellate court may not notice the issue either. The *McGinnes* litigation took place over four decades ago, and it is difficult in hindsight to draw an inference from silence.

11

of a decree could involve a complex undertaking that would necessitate a receiver or other equitable mechanisms and interventions. *See Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *8 (Del. Ch. Oct. 5, 2018). The relief also could require the reallocation of property rights. *See, e.g.*, *Highlights for Child., Inc. v. Crown*, 193 A.2d 205, 206 (Del. Ch. 1963) (finding equitable jurisdiction existed where implementation of declaratory judgment required cancellation of shares); *Kraft*, 145 A.3d at 987 (finding equitable jurisdiction existed where plaintiff's requested relief was "functionally similar to an equitable cancellation of shares"). Under those circumstances, jurisdiction may exist in equity under the second bucket.

Nothing about this case suggests a need for injunctive relief. The Owner complains that the District has not complied with the statute to date, but that is because the District interprets the statue differently. At present, there is no reason to think that the District would fail to comply with a binding judicial declaration. The prayer for an injunction is therefore not sufficient at this stage to support equitable jurisdiction. *See Tunnell Cos., L.P. v. Del. Div. of Revenue,* 2009 WL 2217746, at *1 (Del. Ch. July 13, 2009); *Reed*, 2002 WL 1402238, at *3.

Should this prediction prove inaccurate, and if it turns out that equitable relief is necessary, then mechanisms exist by which the Owner can obtain equitable relief after the declaratory judgment has issued. *See Reed*, 2002 WL 1402238, at *3. At that point, the Owner could file suit in this court seeking equitable relief, or the Owner could ask to have the judge presiding over the case empowered to act as a Vice Chancellor *pro hac vice.* Del. Const. art. IV, § 13(2).

12

It also should be possible for the Owner to obtain relief as a matter of law. As noted previously, the *McGinnes* court contemplated an enforceable judgment for money damages on which property holders could collect. *McGinnes Chancery*, 377 A.2d at 21. The Delaware Superior Court can award that form of relief. It is true that a taxpayer has no cognizable legal claim for the recovery of voluntarily paid taxes in the absence of a statute conferring that right. *Id.* at 19–20. But if the Owner is correct in its interpretation of Section 1921, then the statute provides a basis to recover an enforceable judgment, comparable to the relief contemplated in the *McGinnes* case.

## III. CONCLUSION

The Owner has not shown grounds for the existence of equitable jurisdiction. The case is dismissed, subject to the Owner's right to elect under 10 *Del. C.* § 1902 to have the claim transferred to the Superior Court of Delaware.